# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LAUREN C., BY AND THROUGH HER NEXT FRIEND, TRACEY K. | § § § | |
| v. | § § | Civil Action No. 4:15-CV-00544<br>Judge Mazzant |
| LEWISVILLE INDEPENDENT SCHOOL DISTRICT | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Lewisville Independent School District's Motion for Judgment on the Administrative Record (Dkt. #24) and Plaintiff's Motion for Judgment on the Administrative Record (Dkt. #25). Having considered the pleadings and the administrative record, the Court finds that Defendant Lewisville Independent School District's Motion for Judgment on the Administrative Record (Dkt. #24) is hereby granted. Plaintiff's Motion for Judgment on the Administrative Record (Dkt. #25) is hereby denied.

## BACKGROUND

Plaintiff Lauren C. is a student with disabilities who lives with her mother, Tracey K., in Lewisville, Texas (Dkt. #25 at p. 1). At the time of the administrative due process hearing below, Plaintiff was twenty-one years old and attended school in the Lewisville Independent School District ("LISD") in Lewisville, Texas (Dkt. #25 at p. 1). LISD is the resident school district for Plaintiff, and it is responsible for providing her with a Free Appropriate Public Education under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (the "IDEA").

Plaintiff first attended school in the LISD in 1998. Since enrolling in the LISD, private practitioners and the LISD conducted many evaluations of Plaintiff (AR 1176-1179). Some of these evaluations diagnosed Plaintiff with autism, and others did not (AR 1176-1179). Plaintiff's

physician, Dr. Denise Wooten ("Dr. Wooten") diagnosed Plaintiff with Mental Retardation and autism in 2002 (AR 1176-1179; AR 1323). In 2002, the LISD conducted an evaluation of Plaintiff as required by the IDEA for the provision of special education and related services to a child with a disability (the "Full and Individual Evaluation") (AR 1178). The Full and Individual Evaluation included a psychological evaluation that found that Plaintiff's Childhood Autism Rating Scale "fell within the non-autistic range" (AR 1178). The evaluation concluded that Plaintiff did not meet the diagnostic criteria for Autistic Disorder as the examiner noted Plaintiff "is highly social and very aware of others around her. She exhibits verbal and nonverbal communication to spontaneously seek joint attention." (AR 1178).

On November 8, 2005, when Plaintiff was eleven years old, the LISD conducted another Full and Individual Evaluation of Plaintiff (AR 1141). A licensed psychologist, a licensed speech-language pathologist, an occupational therapist, and a student evaluation specialist evaluated Plaintiff for autism (AR 1141, 1148-49). The multidisciplinary autism team found that Plaintiff did not demonstrate characteristics of autism and found that Plaintiff qualified for special education services as a student with an intellectual disability and speech impairment (AR 1150). On February 26, 2010, the LISD conducted another Full Individual Evaluation of Plaintiff that again found that Plaintiff met the criteria of a student with an intellectual disability and speech impairment (AR 1179).

On February 25, 2013, the LISD conducted another Full Individual Evaluation of Plaintiff (AR 1174–1221). The evaluation team determined that Plaintiff "does not demonstrate qualitative deficits in social communication or reciprocity beyond what are accounted for by her intellectual disability; therefore, she does not meet the diagnostic criteria for the disability condition of Autism" (AR 1209). The evaluation recommended speech therapy, occupational therapy,

strategies to address behavioral difficulties, social skill instruction, and strategies to assist with attention, following directives, and completing tasks (AR 1211–1213).

On March 26, 2013, Plaintiff's Admission, Review, and Dismissal committee (the "ARD Committee") met to review Plaintiffs progress, eligibility, and placement (AR 1253–1255). The ARD Committee reviewed a private psychological evaluation by Dr. Denise Wooten that diagnosed Plaintiff as a student with autism and mild to moderate Mental Retardation (AR 1253). The ARD Committee found that Plaintiff did not meet eligibility as a student with autism (AR 1253). Plaintiff's parents expressed disagreement with regard to the autism eligibility and the meeting ended in non-consensus (AR 1254). Plaintiff's parents "expressed agreement with the proposed [Individual Education Program] goals, accommodations, and schedule of services and had no concerns or disagreement with the program as proposed." (AR 1254). Plaintiff's parents "were not concerned with the Autism supplement and their goal was not to obtain any additional services from the school system, but wanted the Autism eligibility added in order to ensure optimal services from [the Department of Assistive and Rehabilitative Services], [Supplemental Security Income], and other agencies in the future." (AR 1254).

On April 5, 2013, the ARD Committee reconvened to address Plaintiff's parents' concerns over the request for autism eligibility (AR 1255). Dr. Key, a member of the ARD Committee, stated that during the recess she faxed Plaintiff's evaluation to Dr. Wooten (AR 1255). Dr. Key called Dr. Wooten's office, but was unable to speak with Dr. Wooten (AR 1255). Dr. Key also stated she spoke with Plaintiff's pediatrician, Dr. Naylor, who diagnosed Plaintiff with Mental Retardation/Developmental Delay, Attention Deficit/Hyperactivity Disorder and epilepsy (AR 1278-79). However, Dr. Naylor did not conduct an evaluation for autism (AR 1255). The ARD Committee concluded that it stood by the evaluation that Plaintiff did not qualify as a student

with autism (AR 1255). Plaintiff's parents disagreed with the ARD Committee's conclusion and requested an Independent Educational Evaluation for the diagnosis of autism (AR 1280).

On August 17, 2013, Dr. Kim Johnson, Psy.D. ("Dr. Johnson") conducted Plaintiff's Independent Educational Evaluation (AR 1323–1328). Dr. Johnson found that Plaintiff manifested behaviors "characteristic of individuals with Autism with regard to stereotyped behavior, communication, and social interaction." (AR 1326; 1327). Plaintiff's "Autism Quotient" demonstrated an "above average degree of probability of autism" (AR 1326). Dr. Johnson noted that Plaintiff's "progress and development resulted in some 'partially remitted' symptoms or an atypical presentation of Autism." Dr. Johnson noted that although Plaintiff's autism symptoms may have "partially remitted," Plaintiff's clinical diagnoses were both Moderate Mental Retardation and autism (AR 1327).

Dr. Johnson further stated that Plaintiff displayed "some Autistic behaviors within the school setting that would not necessarily manifest if she only had the diagnosis of [Mental Retardation], Moderate. [Plaintiff] manifests some partially–remitted autistic behaviors . . . but also continues to manifest some classic autistic behaviors . . ." (AR 1328). Dr. Johnson noted Plaintiff's "exceptional recall of facts and information and completing puzzles that is not typically seen in an individual with Moderate Mental Retardation due to the more evenly cognitive deficit pattern that is characteristic of the disorder." (AR 1328). Dr. Johnson concluded as follows:

> After review of the recent [Individual Education Program] in February 2013, the LISD evaluation team completed a comprehensive evaluation with very appropriate recommendations to address Lauren's intellectual, social, behavioral, speech–related, and occupational therapy–related delays—these cannot currently be improved upon and space will not be wasted in this report merely to repeat them here. Likewise, [Plaintiff's mother] made no complaint about the type and quality of services provided by the District; rather, her concern was over the diagnostic label."

(AR 1328). Dr. Johnson reiterated that Plaintiff was a student "with an Intellectual Disability and Autism." (AR 1328).

On September 12, 2013, the ARD Committee met to consider Dr. Johnson's Independent Educational Evaluation (AR 1336–37). The ARD Committee stated that Plaintiff's special education teacher noted Plaintiff "does interact and enjoys social interaction with her peers." (AR 1337). The ARD Committee also noted that the LISD's "psychologist reviewed the history of diagnoses for [Plaintiff] including the reports from Dr. Wooten. The district has completed 3 comprehensive evaluations since her enrollment in LISD and not found her to be [Autistic]." (AR 1337). The ARD Committee did not accept the autism diagnoses made by Dr. Johnson and the meeting ended in non-consensus (AR 1337).

On March 26, 2014, the ARD Committee met for Plaintiff's annual meeting (AR 1354). Plaintiff requested an Independent Educational Evaluation in the areas of occupational therapy, assistive technology, speech, adaptive physical education, and functional behavior assessment (AR 1461–62). The ARD Committee reconvened on May 21, 2014, due to scheduling issues (AR 1395). The ARD Committee developed an Individual Education Program to include the provision of occupational therapy, adaptive physical education, speech, transportation, parent training, and assistive technology (AR 1392). The ARD Committee determined that Plaintiff "successfully met academic requirements for the minimum graduation plan" and stated that Plaintiff required continued support in the areas of independent living, vocational training, employment options, and money management (AR 1390). The ARD Committee recommended continuing Plaintiff's education in a Focus on the Future program for the 2014–2015 academic school year (AR 1397). Plaintiff's attorney stated he would disagree with the ARD

recommendation so that he could confer with his client and speak with the LISD's attorney (AR 1397).

On August 21, 2014, Plaintiff requested a due process hearing under the IDEA (Dkt. #10 at ¶ 5). In her request, Plaintiff complained of Defendant's failure to comply with its obligations under the IDEA to identify and address all of her multiple disabilities and to create an Individualized Education Program ("IEP") which took each of those disabilities into account (Dkt. #10 at ¶ 5). The parties participated in hearing on April 22 and 23, 2015. Following the completion of the due process hearing, on June 22, 2015, the Special Education Hearing Officer ("SEHO") issued a decision finding:

1. The LISD "failed to comply with its Child Find obligations . . . in failing to diagnose [Plaintiff] as autistic when assessing her disabilities." (AR 31).

2. The LISD "failed to identify that Plaintiff was eligible for special education services as a student with the disability of autism." (AR 31).

3. Plaintiff is eligible for IDEA services with her specific learning disabilities including autism (AR 31).

4. The LISD provided a Free Appropriate Public Education and "there were no substantive or procedural violations." (AR 31).

5. The LISD met its burden of proving Plaintiff is not entitled to an Independent Educational Evaluation at the LISD's expense "because an appropriate [Full and Individual Evaluation] was conducted" by the LISD. (AR 31).

The ARD Committee convened on September 4, 2015, and added autism eligibility for Plaintiff's special education (Dkt. #23). No additional changes were made to Plaintiff's Individual Education Program (Dkt. #23).

On November 14, 2016, the LISD filed a Motion for Judgment on the Administrative Record (Dkt. #24). The LISD contends that the SEHO erred in determining that the LISD failed to comply with its Child Find obligations (Dkt. #24 at p. 1). The LISD also argues that the SEHO erred in determining that it failed to identify Plaintiff as eligible for special education services as a student with autism and erred in ordering the LISD to add autism as an eligibility for Plaintiff when Plaintiff did not seek such relief in the underlying due process hearing (Dkt. #24 at p. 2). The LISD also argues the SEHO improperly relied on evidence not contained in the record (Dkt. #24 pp. 1–2).

On December 26, 2016, Plaintiff filed a response (Dkt. #29). Plaintiff argues the SEHO correctly determined that the LISD failed to comply with the Child Find Provisions of the IDEA (Dkt. #29 at p. 4). However, Plaintiff argues that the SEHO erred in determining that the LISD provided Plaintiff a Free and Appropriate Public Education (Dk. #29 at p. 8). On January 16, 2016, the LISD filed a reply (Dkt. #30). On January 30, 2016, Plaintiff filed a sur-reply (Dkt. #33).

On November 14, 2016, Plaintiff filed a Motion for Judgment on the Administrative Record (Dkt. #25). Plaintiff seeks attorneys' fees as the prevailing party in the administrative due process hearing (Dkt. #25 at p. 1). On December 26, 2016, the LISD filed a response (Dkt. #28). On January 16, 2016, Plaintiff filed a reply (Dkt. #31). On January 30, 2016, the LISD filed a sur-reply (Dkt. #32).

## LEGAL STANDARD

"Under the IDEA, a federal district court's review of a state hearing officer's decision is 'virtually *de novo*.'" *Adam J. v. Keller Indep. Sch. Dist.,* 328 F.3d 804, 808 (5th Cir. 2003). "The district court must receive the state administrative record and must receive additional evidence at

the request of either party." *Id.* The court must reach an independent decision based on a preponderance of the evidence. *Houston Indep. Sch. Dist. v. Bobby R.,* 200 F.3d 341, 347 (5th Cir. 2000); *Michael F.,* 118 F.3d at 252. However, this requirement "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cty v. Rowley,* 458 U.S. 176, 206 (1982). Instead, "due weight" is to be given to the SEHO's decision. *Id.* Thus, "courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to the state and local educational agencies in cooperation with the parents or guardians of the child." *Id.* at 207. The party seeking relief under the IDEA bears the burden of proof. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

## ANALYSIS

### Child Find

The Court finds the SEHO erred in concluding that that LISD "failed to comply with its Child Find obligations . . . in failing to diagnose [Plaintiff] as autistic when assessing her disabilities." (AR 31).

Texas has an ongoing obligation to "identif[y], locat[e], and evaluat[e]" "all children with disabilities residing in the State" to ensure that they receive needed special education services. 20 U.S.C. §§ 1412(a)(3)(A), 1412(a)(10)(A)(ii). "The IDEA's Child Find obligation imposes on each local educational agency an affirmative duty to have policies and procedures in place to locate and timely evaluate children with suspected disabilities in its jurisdiction, including "[c]hildren who are suspected of being a child with a disability . . . and in need of special education, even though

they are advancing from grade to grade[.]" *El Paso Indep. Sch. Dist. v. Richard R*., 567 F. Supp. 2d 918, 949–50 (W.D. Tex. 2008) (quoting 34 C.F.R. §§ 300.111(a), (c)(1)). "The Child Find duty is triggered when the local educational agency has reason to suspect a disability coupled with reason to suspect that special education services may be needed to address that disability." *Id.* at 950 (citing *Dep't of Educ., State of Hawaii v. Cari Rae S.,* 158 F.Supp.2d 1190, 1194 (D.Haw.2001); *C.G. v. Five Town Cmty. Sch. Dist.,* No. 05–237–P–S, 2007 WL 494994, at *25 (D.Me. Feb.12, 2007); *Kanongata'a v. Washington Interscholastic Activities Ass'n,* No. C05–1956C, 2006 WL 1727891, at *20 (W.D.Wash. Jun.20, 2006)). A local educational agency "must evaluate the student within a reasonable time after school officials have notice of behavior likely to indicate a disability." *Id.* (quoting *Strock v. Indep. Sch. Dist. No. 281,* No. 06–CV–3314, 2008 WL 782346, at *7 (D.Minn. Mar. 21, 2008) (citations omitted)).

A Court must "undertake a two-part inquiry to determine whether a local educational agency has complied with its Child Find responsibilities." *Id.* First, the Court "must examine whether the local educational agency had reason to suspect that a student had a disability, and whether that agency had reason to suspect that special education services might be needed to address that disability." *Id.* "Next, the Court must determine if the local educational agency evaluated the student within a reasonable time after having notice of the behavior likely to indicate a disability." *Id.*

Here, the LISD knew Plaintiff had a disability when Plaintiff transferred into the school district in 1998. Plaintiff's physician, Dr. Wooten diagnosed Plaintiff with Mental Retardation and autism in 2002 (AR 1176-1179; AR 1323). In 2002, the LISD conducted a Full and Individual Evaluation, including a psychological evaluation that found that Plaintiff's Childhood Autism Rating Scale "fell within the non-autistic range" (AR 1178). The evaluation concluded that

Plaintiff did not meet the diagnostic criteria for Autistic Disorder. On November 8, 2005, the LISD conducted another Full and Individual Evaluation of Plaintiff, which included a multidisciplinary autism team that found that Plaintiff did not demonstrate characteristics of autism (AR 1150). On February 26, 2010, the LISD conducted another Full Individual Evaluation of Plaintiff that again found that Plaintiff met the criteria of a student with an intellectual disability and speech impairment (AR 1179). On February 25, 2013, the LISD again conducted a Full Individual Evaluation of Plaintiff that determined that Plaintiff "does not demonstrate qualitative deficits in social communication or reciprocity beyond what are accounted for by her intellectual disability; therefore, she does not meet the diagnostic criteria for the disability condition of Autism" (AR 1209). On September 12, 2013, the ARD Committee met to consider Dr. Johnson's Independent Educational Evaluation (AR 1336–37) and again determined Plaintiff did not qualify as a student with autism.

The Court finds the LISD satisfied the two-part inquiry required to determine whether a local educational agency complied with its Child Find responsibilities. *Richard R.*, 567 F. Supp. at 949–50. First, the Court finds the LISD had reason to suspect that a Plaintiff had a disability, and had reason to suspect that special education services might be needed to address that disability. *Id*. Next, the Court finds the LISD evaluated Plaintiff within a reasonable time after having notice of the behavior likely to indicate a disability. *Id.* The LISD knew Plaintiff had a disability when Plaintiff transferred into the district and knew in 2002 that Plaintiff's physician diagnosed Plaintiff with autism. The LISD evaluated Plaintiff on multiple occasions for autism after having notice of the behavior likely to indicate a disability, including autism. The LISD complied with its Child Find obligations.

*Identifying Plaintiff as a Student with Autism*

As part of its determination that the LISD violated the Child Find provisions of the IDEA, the SEHO held that the District failed to identify Plaintiff as an individual eligible for services related to autism (AR 21). The SEHO erred in this determination.

As discussed above, the Child Find provisions of the IDEA require a Court to examine whether the local educational agency had reason to suspect that a student had a disability and whether the local educational agency evaluated the student within a reasonable time. The LISD met these obligations. That the LISD did not diagnose Plaintiff with autism disorder after multiple evaluations testing for autism does not mean that LISD failed to comply with its Child Find procedural obligations. On the contrary, the multiple evaluations demonstrate that the LISD complied with these obligations. *See C.P. v. Krum Indep. Sch. Dist.*, No. 4:13CV63, 2014 WL 4651534, at *12 (E.D. Tex. Sept. 17, 2014) (holding that a school district's full evaluation of plaintiff, including an evaluation for autism spectrum disorder, shortly after suspecting plaintiff had a disability was "sufficient to satisfy [the school district's] Child Find obligations."); *Dallas Indep. Sch. Dist. v. Woody*, 178 F. Supp. 3d 443, 468 (N.D. Tex. 2016) (holding that a school district did not violate its Child Find obligations because it evaluated Plaintiff within a reasonable time).

Further, the IDEA specifies "[n]othing in this chapter requires that children be classified by their disability so long as each child who has a disability listed in section 1401 of this title and who, by reason of that disability, needs special education and related services is regarded as a child with a disability under this subchapter." 20 U.S.C. § 1412(a)(3)(B). "Various courts throughout the nation have also held that school districts are not required to classify a student into a particular category, or affix that student with a particular label. Instead, the IDEA only requires that the

school district provide an appropriate education." *G.I. v. Lewisville Indep. Sch. Dist.*, No. 4:12CV385, 2013 WL 4523581, at \*10 (E.D. Tex. Aug. 23, 2013). *See Fort Osage R–1 Sch. Dist. v. Sims,* 641 F.3d 996, 1004 (8th Cir.2011) ("Given the IDEA'S strong emphasis on identifying a disabled child's specific needs and addressing them . . . the particular disability diagnosis affixed to a child in an [Individual Education Program] will, in many cases, be substantively immaterial because the [Individual Education Program] will be tailored to the child's specific needs."); *Heather S. v. State of Wisconsin,* 125 F.3d 1045, 1055 (7th Cir.1997) ("[t]he IDEA concerns itself not with labels, but with whether a student is receiving a free and appropriate education."); *D.B. v. Houston Indep. Sch. Dist.,* No. Civ. A. H–06–354, 2007 WL 2947443, at \*10 (S.D.Tex. Sept. 29, 2007) ("IDEA does not require that children be classified by their disability so long as each eligible child is regarded as a child with a disability under the Act.").

Additionally, the "fact that plaintiff believes he was mislabeled does not automatically mean that he was denied a [Free Appropriate Public Education]". *R.C. ex rel. S.K., D.H. v. Keller Indep. Sch. Dist.*, 958 F. Supp. 2d 718, 732 (N.D. Tex. 2013). A court must look "not to whether plaintiff was properly labeled as . . . autistic, but whether the [Individual Education Program] itself was sufficiently individualized to meet plaintiff's unique needs and provide him with educational benefits." *Id.*

The SEHO erred in holding that as a matter of law, the LISD violated its Child Find obligations because it failed to diagnose Plaintiff as autistic (AR 31). A specific classification or label is not required as part of the Child Find obligations or as part of the IDEA itself. 20 U.S.C. § 1412(a)(3)(B). The relevant inquiry is whether Plaintiff received a Free Appropriate Public Education. The Court will thus address whether the LISD provided Plaintiff a Free Appropriate Public Education.

*Free Appropriate Public Education*

The SEHO found that the LISD provided a Free Appropriate Public Education and there were no substantive or procedural violations (AR 31). Plaintiff argues that because the SEHO found that the LISD failed to diagnose Plaintiff's autism, the SEHO erred in determining that the LISD had provided Plaintiff with a Free Appropriate Public Education (Dkt. #29 at p. 6). The Court finds that the LISD provided Plaintiff with a Free Appropriate Public Education.

States receiving federal assistance under the IDEA must: (1) provide a "free appropriate public education" to each disabled child within its boundaries, and (2) ensure that such education is in the "least restrictive environment" ("LRE") possible. *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.,* 118 F.3d 245, 247 (5th Cir. 1997); 20 U.S.C. § 1412(a)(1), (5). The Free Appropriate Public Education provided must be developed to each disabled child's needs through an "individual education program." *Michael F.,* 118 F.3d at 247. In Texas, the committee responsible for preparing an Individual Education Program is the ARD Committee. *Id.* at 247.

"The primary vehicle through which a [Free Appropriate Public Education] is provided is a student's [Individual Education Program], and the determination of whether a student received a [Free Appropriate Public Education] is typically made by evaluating the student's [Individual Education Program] and its implementation." *R.C. ex rel. S.K., D.H. v. Keller Indep. Sch. Dist.*, 958 F. Supp. 2d 718, 730 (N.D. Tex. 2013). "When a parent challenges the appropriateness of an [Individual Education Program], a reviewing court's inquiry is two-fold." *Houston Indep. Sch. Dist. v. V.P.,* 582 F.3d 576, 583 (5th Cir. 2009). "The court must first ask whether the state has complied with the procedural requirements of the IDEA, and then determine whether the [Individual Education Program] developed through such procedures was 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* at 583–84 (citation omitted).

The Fifth Circuit has developed four factors in evaluating whether an Individual Education Program is reasonably calculated to enable the student to receive educational benefits: (1) whether the program is individualized on the basis of the student's assessment and performance; (2) whether the program is administered in the least restrictive environment; (3) whether the services are provided in a coordinated and collaborative manner by the key "stakeholders;" and (4) whether positive academic and non-academic benefits are demonstrated. *Michael F.,* 118 F.3d at 253. The Fifth Circuit has treated the factors "as indicators of when an [Individual Education Program] meets the requirements of IDEA, but [has] not held that district courts are required to consider them or to weigh them in any particular way." *Richardson Indep. Sch. Dist. v. Michael Z.,* 580 F.3d 286, 293 (5th Cir.2009).

### *Whether the Individual Education Programs were Individualized*

Plaintiff argues that the "LISD's failure to diagnose Plaintiff with autism and address her needs as an autistic student constitutes a failure to provide a program individualized on the basis of her assessment and performance." (Dkt. # 29 at p. 9). Plaintiff argues the LISD failed to utilize the autism supplement and Applied Behavioral Analysis ("ABA") therapy (Dkt. #29 at p. 9). The LISD responds that it considered the strategies contained in the autism supplement, including ABA therapy (Dkt. #30).

During the due process hearing, Jean Stephens, an assessment specialist for the LISD, testified that the LISD considered the autism supplement to "address all of [Plaintiff's] social skills . . . her classroom management and her [Individual Education Programs]." (AR 1789; AR 1800–1801). Dr. Key likewise testified that the LISD implemented "all aspects of the autism supplement" in evaluating Plaintiff and addressed the autism supplement in ARD documentation for all individuals in special education, including Plaintiff (AR 1860–1861). Dr. Key further

testified that the LISD "absolutely" used formal ABA therapy with Plaintiff (AR 1861). Dr. Key stated that Plaintiff's teachers, Steve Johnson and Cindy Lisenby implemented goals for Plaintiff based on ABA principles (AR 1861). Karen Shearer ("Shearer"), a Board Certified Behavior Analyst for the LISD likewise testified that she observed Plaintiff in the classroom setting since Plaintiff was eight or nine years old (AR 1994). Shearer described the LISD's use of ABA methodology with Plaintiff including, "prompting," "modeling," and visual supports" which were "evidence based." (AR 1994). Shearer stated that she reviewed Plaintiff's assessments and Individual Education Programs and felt that the goals were appropriate to address Plaintiff's needs (AR 1995).

Further, during the March 26, 2013, Plaintiff's parents "expressed agreement with the proposed [Individual Education Program] goals, accommodations, and schedule of services and had no concerns or disagreement with the program as proposed." (AR 1254). Plaintiff's parents "were not concerned with the Autism supplement and their goal was not to obtain any additional services from the school system, but wanted the Autism eligibility added in order to ensure optimal services from [the Department of Assistive and Rehabilitative Services], [Supplemental Security Income], and other agencies in the future." (AR 1254).

On August 17, 2013, Dr. Johnson conducted Plaintiff's Independent Educational Evaluation and found that the LISD should have diagnosed Plaintiff with both Moderate Mental Retardation and autism (AR 1327). However, Dr. Johnson noted:

> After review of the recent [Individual Education Program] in February 2013, the LISD evaluation team completed a comprehensive evaluation with very appropriate recommendations to address Lauren's intellectual, social, behavioral, speech–related, and occupational therapy–related delays—these cannot currently be improved upon and space will not be wasted in this report merely to repeat them here. Likewise, [Plaintiff's mother] made no complaint about the type and quality of services provided by the District; rather, her concern was over the diagnostic label."

(AR 1328).

Plaintiff argues that the "LISD does not use rigorous ABA therapy at all, but rather takes a loose approach to data collection and analysis completely contrary to that dictated by the principles of ABA" (Dkt. #29). The educational program provided under the IDEA "need not be the best possible one, nor one that will maximize the child's educational potential; rather it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Michael F.*, 118 F.3d at 253. Here, the administrative record demonstrates that Plaintiff had several evaluations that assessed Plaintiff for autism. The administrative record further demonstrates that the LISD developed a program specifically individualized to address Plaintiff's needs. The Individual Education Programs incorporated the autism supplement and ABA therapy methodologies even though the LISD did not diagnose Plaintiff with autism. Plaintiff's Full and Individual Evaluation likewise indicated that although the LISD had not diagnosed Plaintiff with autism, the LISD appropriately addressed Plaintiff's intellectual, social, behavioral, speech–related, and occupational therapy delays and that the LISD could not improve upon these areas. Plaintiff's parents likewise indicated "their goal was not to obtain any additional services from the school system."

Plaintiff's evaluations and her Individual Education Programs focused on all aspects of her education and incorporated the autism supplement and ABA therapy, regardless of the disability label. "The fact that the parents disagreed with the conclusions of the ARD [Committee], some of the content of the [Individual Education Programs], or the eligibility category does not mean that the [Individual Education Program] was not appropriately individualized for plaintiff." *R.C. ex rel. S.K., D.H.*, 958 F. Supp. 2d at 733. Plaintiff has not met her burden of demonstrating the Individual Education Program was not individualized based on her assessment and performance.

*Least Restrictive Environment*

Plaintiff argues "because LISD has failed to develop an [Individual Education Program] that addresses Plaintiff's needs as a student with autism, it is not possible to determine whether she is in the least restrictive environment appropriate to her needs." (Dkt. #29 at p. 13). The SEHO noted during the due process hearing that "that there does not appear to be any disagreement in that the program is administered in the least restrictive environment, the special education classroom, and that Student participates with non-disabled peers in appropriate environments." (AR 27). Plaintiff has not met her burden of demonstrating the LISD failed to provide services in the least restrictive environment appropriate to her needs.

*Provision of Services in a Collaborative Manner by Key Stakeholders*

The IDEA provides that the Individual Education Program team consists of the parents, at least one regular education teacher of the student, at least one special education teacher of the student, a representative of the school district who is qualified to provide specially designed instruction and is sufficiently knowledgeable about the general education curriculum and availability of resources, and an individual who can interpret the instructional implications of evaluation results. 20 U.S.C. § 1414(d)(1)(B). In addition, at the parents' or agency's discretion, the team may include other individuals who have knowledge or special expertise regarding the student. *Id*

While the IDEA gives the parents the right to provide meaningful input, this right "is simply not the right to dictate the outcome and obviously cannot be measured by such." *White v. Ascension Parish Sch. Bd.,* 343 F.3d 373, 380 (5th Cir.2003). "If a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation." *Andress v. Cleveland*

*Indep. Sch. Dist.,* 64 F.3d 176, 178 (5th Cir.1995). A parent who disagrees with the school's evaluation has the right to have an independent evaluation conducted, and the evaluation must be considered by the school district. *Id.*; 34 34 C.F.R. § 300.503.

Here, the administrative record shows that the ARD Committee met on multiple occasions, included all required and relevant individuals, and considered all reports from Plaintiff's physicians. Plaintiff argues that the LISD "refused to give Plaintiff's parents any substantive grounds for disagreeing with the conclusions reached by their [Independent Educational Evaluation] provider, Dr. Kim Johnson, and another evaluator, Dr. Denise Wooten, stating instead that they simply placed their trust in LISD's own evaluation." (Dkt. #29 at p. 13). However, the administrative record demonstrates that the LISD attempted to contact Dr. Wooten and never received a return call from her to discuss the autism diagnosis (AR 1255). Further, Dr. Johnson's evaluation noted that Plaintiff's "progress and development resulted in some 'partially remitted' symptoms or an atypical presentation of Autism." (AR 1327). Dr. Johnson also noted that overall the LISD conducted a "comprehensive evaluation with very appropriate recommendations" to address Plaintiff's needs (AR 1328). The LISD stated that it disagreed with Dr. Johnson's diagnosis based on three comprehensive, multidisciplinary evaluations conducted since Plaintiff's enrollment in LISD. (AR 1337).

Plaintiff has not met her burden of demonstrating the LISD did not offer services in a coordinated and collaborative fashion. That Plaintiff's parents disagree with the conclusions of the ARD Committee does not mean that the services were not offered in a coordinated and collaborative fashion.

*Positive Academic and Non-Academic Benefits*

Plaintiff contends that the LISD did not provide Plaintiff with an appropriately meaningful benefit with respect to life skills (Dkt. #29 at p. 14). Plaintiff states that "Plaintiff has not mastered her [Individual Education Program] goal regarding wiping after a bowel movement." (Dkt. #29 at p. 14). Plaintiff notes:

> the LISD occupational therapist indicated that Plaintiff continued to need four or more prompts to wipe all the way . . . Consequently, the ARD Committee simply put in another goal regarding wiping . . . However, no evidence points to any change in approach designed to allow Plaintiff to effectuate mastery.

(Dkt. #29 at p. 14). Plaintiff also states, "Plaintiff's current teacher acknowledges that Plaintiff is incompetent now with respect to the same life skills regarding which she was incompetent in January of 2014." (Dkt. #29 at p. 14). Plaintiff argues that with the help of her private provider, Teach Me, Plaintiff has "finally become aware of the need to wipe . . . and to address other aspects of personal hygiene." (Dkt. #29 at p. 15). However, Plaintiff notes, "she still has not mastered these skills." (Dkt. #29 at p. 15).

The administrative record demonstrates and Plaintiff acknowledges that the LISD implemented progress reports with functional goals including the use of toilet paper/wipes to clean after a bowel movement and independent hand washing (AR 1361). The LISD also implemented goals such as "compensatory speech strategies," "acceptable social behaviors in school and work environment," and "store orientation to use a shopping list." (AR 1362). The LISD measured Plaintiff's progress throughout the school year, noting the percentage of progress expected and attained (AR 1482–1516). The LISD's therapist recorded notes of each goal and the progress made including notes such as "working in the bathroom today with student . . . she will need to work on all of the micro-steps between the initial backward reach and wiping" and "supporting toileting goals with fine motor and trunk strengthening exercise." (AR 1621–1644, 1645–1666).

The core of the IDEA is to provide access to educational opportunities and requires only the "basic floor of opportunity," and some meaningful educational benefits more than de minimis, not a perfect education and not the maximum of Plaintiff's potential. As the SEHO noted in its decision "while TeachMe's practices may be superior to the [LISD's] practices, it has not been shown that the [LISD's] educational program is not meaningful" (AR 28). The LISD maintains logs indicating the tasks attempted, progress report logs recording success or failure, and whether a prompt or other assistance was needed.

Considering Plaintiff's academic, social, and behavioral progress evidenced in the administrative record, and the opinion of the SEHO who had the opportunity to observe witnesses and make credibility determinations, the Court concludes that Plaintiff gained measurable educational benefits sufficient to comply with the IDEA.

Having examined this case under all four of the *Michael F.* factors, the Court concludes by a preponderance of the evidence that LISD's Individual Education Program for Plaintiff was reasonably calculated to enable her to receive meaningful educational benefits and thus provided her with a Free Appropriate Public Education in accordance with IDEA.

***Special Education as a Student with Autism***

The LISD contends that the SEHO erred in ordering the ARD Committee to convene in order to develop an Individual Education Program with autism added as a disability (Dkt. #30 at p. 15). The ARD committee convened on September 4, 2015, and added autism eligibility for Plaintiff's special education (Dkt. #23). However, no additional changes were made to Plaintiff's Individual Education Program (Dkt. #23). Because the LISD did not violate its Child Find obligations and provided Plaintiff with a Free Appropriate Public Education, the SEHO erred in

ordering the LISD to develop an Individual Education Program with autism added as disability[1].

In any event, as discussed above, the LISD considered the autism supplement and ABA therapy in preparing Plaintiff's Individual Education Programs and did not have to make additional changes to Plaintiff's Individual Education Program after adding autism eligibility for Plaintiff's special education.

The parties also dispute in their briefing whether the SEHO was correct in finding that Plaintiff is a student with autism. The Court has found that the LISD was not required to classify a student into a particular category, or affix that student with a particular label in order to meet its Child Find obligations or to comply with the IDEA. The Court also found that the LISD provided Plaintiff a Free Appropriate Public Education. The Court need not weigh in on Plaintiff's disputed diagnosis.

### Attorneys' Fees

Under the IDEA, a plaintiff may receive reasonable attorneys' fees if she can show that she is a prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i). The Court found the LISD complied with its Child Find obligations and provided Plaintiff a Free Appropriate Public Education. Plaintiff's Motion for Judgment on the Administrative Record seeking attorneys' fees (Dkt. # 25 at p. 25) is therefore denied.

### CONCLUSION

It is therefore **ORDERED** that Defendant Lewisville Independent School District's Motion for Judgment on the Administrative Record (Dkt. #24) is hereby **GRANTED**. Plaintiff's Motion for Judgment on the Administrative Record (Dkt. #25) is hereby **DENIED**.

---

[1] Plaintiff's due process request also did not seek special education eligibility based on the disability of autism (AR 2). Plaintiff sought compensation as an equitable remedy for educational services the LISD failed to provide, an appropriate Individual Education Program, and reimbursement for past and future private placement (AR 2).

**SIGNED this 29th day of June, 2017.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE